Foster *vs.* Copeland.

---

MOSES F. FOSTER, plaintiff in error, *vs.* CHARLES M. COPELAND, defendant in error.

Where a bill was filed by the complainant, praying for an injunction to restrain the sale of the land on which a church had been erected, and, after hearing the parties, the Judge refused the injunction:

*Held*, That, on the statement of facts contained in the record, this Court will not control the discretion of the Court below in refusing the injunction.

Injunction. Before Judge ROBINSON. Green County. Chambers. December, 1870.

Foster, by bill against Copeland *et al.*, sought to enjoin them from the sale of New Hope Baptist Church, in said county, upon the following averments: In 1805, one Daniel executed to one Fielder a deed, conveying to him, as trustee of said New Hope Church and his successors in office, certain three acres of land. The congregation at once built a church upon said land, and continuously occupied it. In 1843, one Johnson, who owned the contiguous, surrounding land, sold his land to one Cardwell, and before Johnson had made a deed to Cardwell, they got into a law-suit as to the titles to Johnson's land. It was rumored that Cardwell contended that the said three acres were covered by his purchase from Johnson. This put Foster and others, members of said church, upon inquiry. They found that Daniel and Fielder were dead, and that the deed from Daniel to Fielder was lost, and had never been recorded. They communicated these facts to Johnson, who said if they would have six acres around said church surveyed, he would give a quit-claim deed thereto. This survey was made, and on the 15th of December, 1847, Johnson made such quit-claim deed to Foster, for the use of said church. Since this deed was made, Foster, with the knowledge and tacit consent of the church, has protected and preserved the property, and kept the keys.

There are fifty-seven members of said church. On the 26th of November, 1870, fourteen of its members, named, confederated to sell said church and convert the proceeds to their private use, and assumed to empower said Copeland to sell the church. No notice of these proceedings were given to Foster, and others opposed thereto; nor did Foster and his allies take any part in these proceedings, except to protest against them as illegal and fraudulent. Under this assumed authority, Copeland, as trustee of said church, has advertised said building and six acres of land for sale, to the highest bidder.

Copeland answered as follows: Foster had never been recognized as trustee of said church, but has had possession, as

sexton, and was paid an annual salary as such. Finding the church without a trustee, forty named persons, representing the church, petitioned the Judge of the Superior Court to appoint a trustee. He refused, because he held that the congregation could appoint one. Thereafter, in November, 1870, it being the regular conference day and meeting, when all matters pertaining to the church are attended to, the parties present elected Copeland such trustee, as Fielder's successor. But sixteen members were present, and but fourteen voted for Copeland; but that was a larger number of members than usually attended such meetings of the church. The large majority of the members are in favor of Copeland's trusteeship, and so far as Copeland knows, none but Foster and family oppose it. His election was certified and recorded in the church books, and in the books of the Superior Court of said county. He was going to sell said property, under authority granted at said meeting, by a regular proceeding, under the rules of said church, requiring him to sell or cause to be sold the old meeting house and land and property belonging to the same, and to invest the proceeds " in the new meeting house, now being built, near," etc. He was *bona fide* proceeding for said purpose, and a large majority of the church were in favor of the new church building, and of selling this one to help pay for that.

The record does not show how this matter got before the Chancellor. When it came on for hearing, he held that Copeland had the right to open and conclude the argument. On the hearing, Foster made affidavit to the facts stated in his bill, and several other members of the church made affidavit to the averments of the answer, and that the election and authority of Copeland was done regularly, and according to the rules of said church. The injunction was refused. Foster says the Chancellor erred in refusing him the right to open and conclude the argument, and in refusing said injunction.

Cohen *vs.* Ward.

A. G. & T. C. FOSTER; J. HILL, for plaintiff in error.

ROBINSON & BRANCH, for defendant.

WARNER, J.

On the statement of facts contained in the record of this case, this Court will not control the discretion of the Court below, in refusing to grant the injunction prayed for in complainant's bill.

Let the judgment of the Court below be affirmed.